AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
JAN 1 4 2020
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                              DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
White Samsung cellular phone )
Seized as FP&F No. 2020565600007701 )
("Target Device #2") )

Case No. 20MJ0138

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A-2

located in the ____Southern____ District of ____California____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 8, United States Code § 1324 | Transport Illegal Aliens(a)(1)(A)(ii) and (v)(II) |

The application is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Giancarlo Lugo, Border Patrol Agent, U.S. Border Patrol
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ____01/14/2020____

_____
*Judge's signature*

City and state: San Diego, California

The Honorable Bernard G. Somal, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Giancarlo Lugo, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

>Black Motorola cellular phone
>Seized as FP&F No. 2020565600007701
>("Target Device #1")
>
>White Samsung cellular phone
>Seized as FP&F No. 2020565600007701
>("Target Device #2")

the ("**Target Device(s)**"), as further described in Attachment(s) A-1, A-2, and to seize evidence of crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant(s) relate(s) to the investigation and prosecution of Victor Manuel Ii VIRAMONTES for transportation of illegal aliens within the United States. The **Target Device(s)** is/are currently in the custody of Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents. This affidavit is intended to show that there is sufficient

1

probable cause for the requested warrant(s) and does not purport to set forth all of my knowledge of the investigation into this matter. Dates and times are approximate.

## TRAINING AND EXPERIENCE

4. I have been employed by the USBP since 2008, and am currently assigned to the San Diego Sector Prosecutions Unit. I graduated from the Border Patrol Basic Academy at the Federal Law Enforcement Training Center in Artesia, New Mexico. I am a Federal Law Enforcement Officer within the meaning of Rule 41(a)(2)(C), Federal Rules of Criminal Procedure and have been a Federal Law Enforcement Officer for ten years. I am authorized by Rule 41(a) Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants. I have experience and have received training with respect to conducting investigations of immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

5. My current duties involve the preparation of criminal and administrative cases for prosecution, including the use of linking related subjects and information via electronic equipment and telephones. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement, transportation, and harboring of illegal aliens into and within the United States; and, the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by illegal aliens to illegally gain entry or remain in the United States.

6. During my tenure as a Border Patrol Agent, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

7. Through the course of my training, investigations, and conversations with

other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

8.   The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.

9. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

10. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

    a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

    c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

11. On January 11, 2020, Border Patrol Agent L. Zavala was conducting assigned duties in the Boulevard Border Patrol Station's area of responsibility. At approximately 8:26 AM, Agent Zavala was notified, via service radio, of a citizen's report of six individuals hiding behind a house known to Border Patrol agents as the "Gecko House." While Agent Zavala was responding to the location, an additional report was broadcasted over the radio. The reporting party stated that there was a white GMC Acadia driving south and north passed his property and may have picked up the six individuals. As Agent Zavala was approaching the intersection of Starship Road and Old Highway 80, she noticed a white GMC Acadia driving north towards her location. Agent Zavala pulled up next to the white GMC Acadia in an attempt to speak with the driver. The driver of the white GMC Acadia, later identified as the defendant, Victor Manuel II VIRAMONTES, stopped to talk to Agent Zavala. This area is located approximately 22.5 miles east of the Tecate, California Port of Entry and 2.25 miles north of the United States/Mexico International Boundary. VIRAMONTES told Agent Zavala that he was lost and was trying to get to the

5

casino. Agent Zavala told VIRAMONTES to pull off to the side of the road so they could continue talking. After VIRAMONTES agreed, Agent Zavala approached the vehicle, identified herself as a Border Patrol agent, and conducted an immigration inspection. VIRAMONTES stated that he is a United States citizen and was traveling from San Bernardino, California. While Agent Zavala was questioning VIRAMONTES, she noticed several individuals lying down in the middle and rear seats attempting to conceal themselves. Border Patrol Agent H. Lucatero arrived on scene and approached the individuals in the back of the vehicle.

12. Agent Lucatero identified himself as a Border Patrol agent, and conducted an immigration inspection. All of the individuals in the back, later identified as Hector Agustin GONZALEZ-Granados, Gudulia MALDONADO-Prado, Alfredo MONTES DE OCA-Beltran, Jose Alberto RANGEL-Baeza, Jose Angel REGALDO-De Leon, and Gustavo RIZO-Mosqueda, stated that they are citizens of Mexico without immigration documents allowing them to enter or remain in the United States legally. At approximately 8:45 AM, Agent Lucatero placed GONZALEZ, MALDONADO, MONTES DE OCA, RANGEL, REGALDO, and RIZO under arrest. At approximately 8:46 AM, Agent Zavala placed VIRAMONTES under arrest. VIRAMONTES had two cell phone in his possession at the time of arrest. The cell phones (**Target Device(s)**) were subsequently seized.

13. Defendant Victor Manuel Ii VIRAMONTES was advised of his Miranda rights. VIRAMONTES stated he understood his rights and was willing to answer questions without an attorney present. On January 8, 2020, VIRAMONTES stated that he was approached at a hotel in San Bernardino, California by a person who he knows as "Sumo." Sumo asked him if he wanted to make some money "driving." VIRAMONTES agreed to the proposition, and stated that he was going to be paid $1000 for driving. Sumo placed a pin on a map in VIRAMONTES' phone instructing him where to go. VIRAMONTES

6

stated he was aware that he was close to the border with Mexico, and realized that he was doing something wrong when he saw individuals coming out of the brush on the dirt road. Once the individuals were in the car, VIRAMONTES received another call from Sumo telling him to get out of the area. VIRAMONTES stated that he was not aware of the location he was supposed to take the individuals. VIRAMONTES stated that he assumed he would be paid upon arriving to meet Sumo.

14. Material witnesses Hector Agustin GONZALEZ-Granados, Gudulia MALDONADO-Prado, Alfredo MONTES DE OCA-Beltran, Jose Alberto RANGEL-Baeza, Jose Angel REGALADO-De Leon, and Gustavo RIZO-Mosqueda stated that they are citizens of Mexico without immigration documents allowing them to enter or remain in the United States legally. GONZALEZ, MALDONADO, RANGEL, REGALADO and RIZO stated that smuggling arrangements were made and they had agreed to pay between $8,000 and $8,500 to be smuggled into the United States. MONTES DE OCA and RANGEL stated they were instructed by the driver to enter the vehicle. When presented with a photographic lineup, GONZALEZ, MONTES DE OCA and RANGEL identified the defendant, Victor Manuel Ii VIRAMONTES, as the driver of the vehicle in which they were arrested.

## METHODOLOGY

15. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and

can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

16. Following the issuance of this warrant, a case agent familiar with the investigation will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

17. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

18. Law enforcement has previously attempted to obtain the evidence sought by this warrant through the owners' consent. Consent was not given.

## CONCLUSION

19. Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Device(s)** will yield evidence of alien smuggling violation of Title 8, United States Code, Sections 1324.

20. Because the **Target Device(s)** were seized at the time of VIRAMONTES' arrest and have been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the **Target Device(s)**. As stated above, I believe that the appropriate date range for this search is from **December 12, 2019, through January 12, 2020**.

21. Accordingly, I request that the Court issue warrants authorizing law enforcement to search the item(s) described in Attachment(s) A-1, A-2, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Giancarlo Lugo
Border Patrol Agent

Subscribed and sworn to before me this ___14th___ day of January, 2020.

Hon. Bernard G. Skomal
United States Magistrate Judge

9

## ATTACHMENT A-2

## PROPERTY TO BE SEARCHED

The following property is to be searched:

White Samsung Smartphone
Seized as FP&F No. 2020565600007701
("Target Device #2")

Target Device is currently in the custody of the Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

## ATTACHMENT B

ITEMS TO BE SEIZED

Authorization to search the cellular telephone(s) described in Attachment(s) A-1 and A-2, includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone(s) for evidence described below. The seizure and search of the cellular telephone(s) shall follow the search methodology described in the affidavit submitted in support of the warrant(s).

The evidence to be seized from the cellular telephone(s) will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of December 12, 2019 through January 12, 2020:

a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers—used to facilitate alien smuggling and transportation of smuggled aliens;

c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

3

  f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which are evidence of violations of Title 8, United States Code, Section 1324.

4